COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Chaney and Lorish
Argued at Virginia Beach, Virginia

UNPUBLISHED

JOKITA HARVEY

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 1116-21-1                          JUDGE LISA M. LORISH
                                                        MAY 17, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph A. Migliozzi, Jr., Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


During an argument about whether Jokita Harvey could park her car in front of the house of

Kelvin Marshall's mother-in-law, blocking her trash cans on trash collection day, Harvey said:

"You live here.  You'll die here.  I'll burn this bitch down."  We reverse her conviction for assault,

which was based on these words alone.

BACKGROUND[1]

Marshall was outside of his mother-in-law's house, working on his wife's car, when Harvey

drove up and attempted to park on the street in front of the house.  It was trash collection day and, in

the past, cars parked on the street that blocked the trash cans had prevented the trash from being

collected.  Marshall had already confronted a few drivers that morning about parking their cars by

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We state the facts "in the light most favorable to the Commonwealth, the prevailing party
at trial."  *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292
Va. 380, 381 (2016)).

his mother-in-law's trash cans. Marshall exchanged words with Harvey, using profane language, about her trying to park there. During this exchange, while Harvey was still inside her vehicle, she said, "You live here. You'll die here. I'll burn this bitch down." Marshall and Harvey had never met before, and Marshall believed that she would follow through with this statement.

Harvey did not park by the trash cans, and instead moved her vehicle down the street. About thirty minutes later, when Harvey was walking down the street, Marshall approached her and they exchanged words again. Marshall told her that he planned to call the police, and Harvey responded, "Call the police. Call the FBI. I don't care who you call[,] just leave me alone." Marshall did call the police, and Harvey was subsequently prosecuted for assault. At no time was there any physical contact between Harvey and Marshall.

Harvey was convicted after a bench trial before Judge Joseph A. Migliozzi, Jr., in September 2021. During this trial, Harvey moved to strike based on the insufficiency of the evidence, arguing that Marshall was the one who initiated contact with her on both occasions, that he had used profane language, and that she could not be convicted of assault based on words alone. The court denied the motion, which was renewed and denied again after the defense rested. Judge Migliozzi explained his ruling this way: "The uncontroverted testimony presented before me is that the Defendant, Jokita Harvey, was there. This was confirmed by the testimony of the Fire Marshal, the complainant and the Defendant herself, so I find her guilty."

In lieu of a transcript for this misdemeanor trial, Harvey's counsel prepared a written statement of facts. The certificate of service for the statement certified "that on the 19[th] day of November, 2021, a true copy of this Written Statement was emailed to Narenda Pleas, Deputy Norfolk Commonwealth's Attorney . . . and such Written Statement will be presented to a Judge of this Court, for signature, no earlier than December 3, 2021, and no later than December 8, 2021."

Pleas signed the written statement as "Seen," and on December 3, 2021, Chief Judge David Lannetti

signed it as well.  Chief Judge Lannetti included the following in handwriting under his signature:

> David Lannetti, Chief Judge, due to the trial judge's unavailability to sign the fully endorsed, unobjected to "Written Statement in Lieu of Transcript" "forthwith upon its presentation to him."  Va. Sup. Ct. R. 5A:8(c)(2).

This appeal followed.

## ANALYSIS

Harvey argues that the evidence was insufficient to support a conviction for assault and

battery based on her words alone.  The Commonwealth asserts that the written statement filed here

fails to comply with Rule 5A:8, and therefore Harvey failed to preserve an indispensable portion of

the record, precluding her appeal.  Alternately, the Commonwealth maintains that the assault

conviction was proper as it was based on Harvey's words plus an overt act.

We begin with the relevant rules.  Rule 5A:8(b)(4)(ii) states that "[w]hen the appellant fails

to ensure that the record contains transcripts or a written statement of facts necessary to permit

resolution of appellate issues, any assignments of error affected by such omission will not be

considered."  At the time the written statement was filed, Rule 5A:8(c) provided, in relevant part,

that a written statement "becomes a part of the record when"

> (1)   within 55 days after entry of judgment a copy of such statement is filed in the office of the clerk of the trial court.  A copy must be mailed or delivered to opposing counsel on the same day that it is filed in the office of the clerk of the trial court, accompanied by notice that such statement will be presented to the trial judge no earlier than 15 days nor later than 20 days after such filing; and

> (2)   the statement is signed by the trial judge and filed in the office of the clerk of the trial court.  The judge may sign the statement forthwith upon its presentation to him if it is signed by counsel for all parties, but if objection is made to the accuracy or

completeness of the statement, it must be signed in accordance with paragraph (d) of this Rule.[2]

Finally, Rule 5A:8(d) governs objections to the written statement and states that

[a]ny party may object to a transcript or written statement on the ground that it is erroneous or incomplete. Notice of such objection specifying the errors alleged or deficiencies asserted must be filed with the clerk of the trial court within 15 days after . . . the date the notice of filing the written statement (paragraph (c) of this Rule) is filed in the office of the clerk of the trial court.

As the Commonwealth concedes, "[t]he absence or late filing of the transcript . . . does nothing to diminish our jurisdiction." *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986). Instead, Rule 5A:8 codifies the obvious: where there are "facts necessary to permit resolution of appellate issues," we cannot consider assignments of error that require consideration of those facts if the facts are not presented to us. Here, we have a written statement of facts in lieu of a transcript, timely filed with Harvey's appeal. The written statement was signed by counsel for Harvey, the Commonwealth (without objection), and the chief judge of the Norfolk circuit court. The Commonwealth argues, however, that the written statement does not technically comply with Rule 5A:8 in two ways. First, that the statement was signed by the chief judge, while the rule says it must be "signed by the *trial* judge." Second, that the written statement's certification incorrectly calculated the dates for review of the transcript, providing a range that began no earlier than *fourteen days* after the filing of the written statement, instead of the fifteen days required by Rule 5A:8(c)(1). Thus, the statement was presented early, and signed early on this fourteenth day, contrary to the rule.

---

[2] The rule was amended, effective January 1, 2022, to provide that a written statement "becomes a part of the record when" "within 60 days after entry of judgment a copy of such statement is filed in the office of the clerk of the trial court" and the other requirements of the rule are met.

The former concern lacks merit. Rule 5A:1(d)(7) defines "judge" to mean "judge of the trial court, unless the context otherwise requires, or if that judge is not available, any judge authorized to act under Rule 5A:9." Turning to Rule 5A:9, "[t]he judge authorized to act in all matters relating to the record on appeal is any judge having authority to enter orders in the case or in the court in which the case was heard or, in a case heard by three judges, any one of them." We have no trouble concluding that the chief judge of the Norfolk circuit court could enter an order here and sign the written statement. *See Napert v. Napert*, 261 Va. 45, 47 (2001) ("Courts are presumed to act in accordance with the law and orders of the court are entitled to a presumption of regularity.").

The latter concern is also easily resolved. Rule 5A:8(c)(1) requires that the written statement be "accompanied by notice that such statement will be presented to the trial judge no earlier than 15 days nor later than 20 days after such filing." The Commonwealth had the opportunity to review the written statement with this certification, and to note any objections. It failed to do so, and instead signed the written statement. Any matter of technical compliance with the certification was waived by the Commonwealth's failure to object below. *See Cody v. Commonwealth*, 68 Va. App. 638, 665 (2018) ("A party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.").

Turning then to the merits, Harvey contends the evidence produced by the Commonwealth was insufficient, as a matter of law, to support the conviction of assault. We will only reverse a conviction for insufficient evidence if we conclude the decision below was "plainly wrong or without evidence to support it." *Commonwealth v. Herring*, 288 Va. 59, 65 (2014).

An assault

> occurs when an assailant engages in an overt act intended to inflict
> bodily harm and has the present ability to inflict such harm or
> engages in an overt act intended to place the victim in fear or

apprehension of bodily harm and creates such reasonable fear or apprehension in the victim.

*Carter v. Commonwealth*, 269 Va. 44, 47 (2005). "Our case law is clear that words *alone* are never sufficient to constitute an assault under either the traditional criminal definition of assault or the assimilated tort definition." *Blankenship v. Commonwealth*, 71 Va. App. 608, 621 (2020).

Here, the Commonwealth failed to prove that Harvey made any overt act at all—let alone one intended to place Marshall in fear or apprehension of bodily harm. The record is unequivocal that Marshall instigated the first interaction with Harvey, when he used profanity to tell her she could not park in front of his mother-in-law's house. It is also undisputed that Harvey remained in her vehicle when she said, "You live here. You'll die here. I'll burn this bitch down." And, after the exchange, she parked elsewhere. It was again Marshall who instigated the second interaction, thirty minutes later, when he approached Harvey on the street and said he would call the police.

The Commonwealth argues that this case is like *Clark v. Commonwealth*, 279 Va. 636 (2010), because here, as there, the parties had two interactions. Clark's conviction followed two confrontations she had with a school bus driver after her son was removed from the driver's bus route. When Clark appeared outside of Coleman's opened bus door, saying, "I'm going to get you," her words had to be considered in light of her "previous threat to inflict bodily harm upon Coleman, her reappearance at a place where she had no explained reason for being, and her blocking Coleman's path of exit and her unconditional threat." *Id.* at 643. In this context, "Clark's act of approaching the bus could be understood as indicating a purpose to inflict bodily contact or injury upon Coleman." *Id.* As a result, she had committed an "overt act with the intent to place [the bus driver] in fear or apprehension of bodily harm." *Id.*

In contrast, Harvey never approached Marshall at all, let alone twice. And far from blocking Marshall's path, she moved her car and parked in a different spot. That Marshall chose

to walk up to her, thirty minutes after the original exchange, cannot constitute an overt act reflecting Harvey's intent to place Marshall in fear of anything.[3]

CONCLUSION

Without proof of any overt act, the assault conviction rests on Harvey's words alone and must be overturned.

*Reversed and dismissed.*

---

[3] For these reasons, the case is also nothing like *Blankenship*, where along with Blankenship's words to police officers trying to arrest him, he balled up his fists, took a step towards them, and adopted a fighting stance. 71 Va. App. at 617. The "attending circumstances" of Blankenship's actions with his words constituted an overt act with the requisite intent to place the officers in fear of harm. *Id.* at 623. So too, the circumstances of Blankenship's separate assault conviction based on his telling a neighbor he would kill him, while walking up and down the steps of his neighbor's home, constituted an overt act. *Id.*